UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MICHAEL MANGINELLI, et al.,

                Plaintiffs,

- against-

HOMEWARD RESIDENTIAL, INC., f/k/a
AMERICAN HOME MORTGAGE
SERVICING, INC. and s/b/m to OPTION
ONE MORTGAGE,

                Defendant.
------------------------------------------------------X

**OPINION AND ORDER**
**13 CV 2334 (SJF)(AKT)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   DEC 09 2013   ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On April 17, 2013, nine (9) named plaintiffs, and one hundred (100) "John Roe" plaintiffs[1], commenced this action against defendant Homeward Residential, Inc. ("defendant"), f/k/a American Home Mortgage Servicing, Inc. and s/b/m to Option One Mortgage,[2] pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). On November 7, 2013, eight (8) of the plaintiffs[3] filed an amended complaint against defendant omitting, *inter alia*, the two (2)

---

[1] Plaintiffs allege that their counsel "is aware of and has provided services to unnamed ROE Plaintiffs, each of whom sustained actual injury. The unnamed ROES sue under their names fictitiously because they either wish to maintain their privacy or because Plaintiffs' counsel have [sic] not completed the due diligence necessary to properly plead their claims as of the filing of this Complaint. From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining ROE Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional ROE Plaintiffs, or will follow such other process as is proscribed [sic] by the Court." (Complaint ["Compl."], ¶ 78).

[2] The complaint also named Ideal Mortgage Bankers, Ltd. as a defendant, but plaintiffs voluntarily dismissed all claims against that defendant on or about June 11, 2013.

[3] The claims of one of the plaintiffs, Ronald Tucker, were voluntarily dismissed on or about June 11, 2013.

1

federal claims asserted in the original complaint, i.e., claims alleging violations of the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, and asserting state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent concealment, fraud, violations of multiple state consumer protection statutes and unjust enrichment. For the reasons set forth below, the amended complaint is *sua sponte* dismissed.

I.  Background

   A.  Factual Background

The amended complaint alleges, *inter alia*, the following:

Defendant received financing from the United States Department of the Treasury ("Treasury Department") in exchange for its participation in the Treasury Department's Home Affordable Modification Program ("HAMP"). (Amended Complaint ["Amend. Compl."], ¶ 1). In addition, as a servicer of Fannie Mae- or Freddie Mac-owned loans and loans backed by the Federal Housing Administration or Veteran's Administration, defendant is "obligated to offer HAMP modifications to [its] respective eligible borrowers, * * *." Id. Moreover, defendant "participates in the government-sponsored Home Affordable Foreclosure Alternatives program (HAFA), the Home Affordable Unemployment Program (HAUP), which provides temporary relief for unemployed borrowers and later eligibility for the HAMP program, and the Hardest Hit Fund (HHF), which provides reinstatement help for borrowers in the states hit hardest by the recession and real estate market collapse," id., including Michigan, New Jersey and South

2

Carolina. Id. According to plaintiffs, defendant "is thus obligated to make extensive efforts to modify qualified loans to reduce the burden on [its] borrowers." Id.

Defendant has serviced the respective mortgages of each plaintiff "[f]or a period ranging from months to several years prior to the commencement of this action[.]" (Amend. Compl., ¶ 2).[4] Each plaintiff defaulted on his or her mortgage, id., and requested a loan modification through defendant. (Amend. Compl., ¶¶ 3, 47). According to plaintiffs, defendant only allows loan relief or a loan modification upon a default. (Amend. Compl., ¶¶ 3, 29).

Defendant provided each plaintiff with a modification application package, (Amend.

---

[4] (1) Plaintiff Michael Manginelli ("Manginelli") (a) owns premises on Magnolia Drive in Selden, New York, (b) executed a promissory note to American Home Mortgage Servicing ("AHMS") secured by a mortgage against those premises and (c) applied for loan modification from defendant on or about March 2013, (Amend. Compl., ¶ 35); (2) plaintiff Anthony Botsakos ("Botsakos") (a) owns premises on Hallahans Hill Road in Kingston, New York, (b) executed a promissory note to AHMS secured by a mortgage against those premises and (c) applied for loan modification from defendant on or about March 2013, (Amend. Compl., ¶ 36); (3) plaintiff Binh Hoang ("Hoang") (a) owns premises on North Grover Street in Valley Stream, New York, (b) executed a promissory note to Option One Mortgage ("OOM") secured by a mortgage against those premises and (c) applied for loan modification from defendant on or about March 2013, (Amend. Compl. ¶ 37); (4) plaintiff Karen Martin ("Martin") (a) owns premises on Hauss Avenue in Eastpointe, Michigan, (b) executed a promissory note to AHMS secured by a mortgage against those premises and (c) applied for loan modification from defendant on or about March 2013, (Compl., ¶ 38); (5) plaintiff Erick Caceres ("Caceres") (a) owned premises on West Englewood Avenue in Teaneck, New Jersey until it was sold in foreclosure on or about January 1, 2013, (b) executed a promissory note to AHMS secured by a mortgage against those premises and (c) applied for loan modification from defendant on or about December 2012, (Amend. Compl. ¶ 39); (6) plaintiff Noreen Gribek ("Gribek") (a) owns premises on Castlebury Road in Walterboro, South Carolina, (b) executed a promissory note to H&R Block Mortgage Corp. secured by a mortgage against those premises and (c) applied for loan modification from defendant "multiple times, including on or about July 2011," (Amend. Compl., ¶ 40); and (7) plaintiffs Mark and Debra Richmond ("the Richmonds") (a) own premises on Hummingbird Court in Crowley, Texas, (b) executed a promissory note to OOM secured by a mortgage against those premises and (c) applied for loan modification from defendant on or about November 2012, (Amend. Compl., ¶ 41).

3

Compl., ¶¶ 4, 48), which required, *inter alia*, him or her "to provide documentation necessary to process the modifications as a condition for the modification agreement." (Amend. Compl., ¶ 4). According to plaintiffs, defendant "represented to [each of them] that, following the submission and review of a completed modification package, [they] would be given terms to make payments as part of a trial modification." (Amend. Compl., ¶ 5). "If Plaintiffs made the necessary monthly payments under the terms of the trial modification, a permanent modification would be perfected." (Amend. Compl., ¶ 5).

According to plaintiffs, each of them accepted defendant's respective loan modification offer to him or her "and worked to meet the terms required of [him or her], expecting Defendant to be bound to perform [its] obligation of granting permanent modifications." (Amend. Compl., ¶ 6). Each plaintiff "either provided all of the requested documentation in support of [his or her] loan modification application to Defendant, and otherwise met all the conditions precedent pursuant to a trial modification offer, or attempted to do so in good faith, but faced substantial interference from Defendant." (Amend. Compl., ¶ 8).

Some plaintiffs did not meet all of defendant's conditions precedent because defendant purportedly "put in place procedural safeguards to make the modification process as onerous and complicated as possible, shepherding [those] Plaintiffs into foreclosure, even going so far as providing conflicting information to [them] regarding which information was received or still needed." (Amend. Compl., ¶ 9). Plaintiffs allege that "Defendant's policies were to intentionally delay the application and documentation process so that documents had to be resubmitted and deadlines passed." Id.

4

Some plaintiffs provided all of the required information and documentation to defendant, but defendant nonetheless "regularly sent missing documentation requests, which often included documents previously sent by [those] Plaintiffs." (Amend. Compl., ¶ 10). In addition, plaintiffs allege that defendant "even provided conflicting information to individual Plaintiffs regarding what was allegedly received." (Amend. Compl., ¶¶ 51, 54). Those plaintiffs, including Gribek, again provided the requested documents to defendant, sometimes multiple times. (Amend. Compl., ¶¶ 10, 15, 52). Plaintiffs allege that defendant's "missing document requests constituted a policy to interfere with and overly burden [their] compliance with modification terms, and were a result of deficient protocols within [its] loan modification operations." (Amend. Compl., ¶ 11).

Some plaintiffs, including Caceres, either never received any explanation for the denial of his or her respective application for a loan modification, or never received any notification accepting or denying his or her respective application for a loan modification, from defendant. (Amend. Compl., ¶ 12).

Those plaintiffs who were provided with an explanation for the denial of their applications for a loan modification were told that his or her respective application was denied due to "alleged shortcomings in the modification process, or failure to meet financial criteria." (Amend. Compl., ¶ 53). In addition, according to plaintiffs, defendant "regularly alleged that [he or she] did not provide the necessary documentation for processing or review." (Amend. Compl., ¶ 13). Plaintiffs allege that defendant's "belief that conditions precedent were not satisfied was based on [its] own conflicting reports and inconsistent status updates, and the failure of [its] loss mitigation representatives to adequately conduct document intake." Id.

Some plaintiffs, including Gribek, were "given trial modification payment terms," (Amend. Compl., ¶ 55), and received promises from defendant "that the furnishing of the necessary trial payments constituted an additional condition precedent pursuant to the modification agreement, the performance of which would result in a permanent modification." Id. Those plaintiffs "made the required payments under the terms of the offered trial modification[,] * * * [but] often ultimately learned, sometimes only after inquiring, that a permanent modification was not provided * * *." (Amend. Compl., ¶ 15). According to plaintiffs, defendant "had no intention to grant a permanent modification, since it was not in [its] financial interest to do so * * * [and] continued to collect trial payments, stripping as much remaining equity from Plaintiffs as possible, knowing that Plaintiffs were pre-destined for a permanent modification rejection." (Amend. Compl., ¶ 16).

Finally, some plaintiffs were granted permanent modifications, but defendant purportedly "included such disadvantageous terms that ultimately rendered Plaintiffs' performance impossible * * *." (Amend. Compl., ¶ 17). The "disadvantageous terms" alleged are "fail[ing] to lower the monthly payment, add[ing] a decade to the term of the loan, or creat[ing] unmangeable balloon payments at the end of the term of the loan." Id.

Plaintiffs allege that modification of loans is not in defendant's "pecuniary interest" because "[u]nder [its] [Credit Default Swaps ("CDS")/Collateralizaed Debt Obligations ("CDO")] scheme, [it] only receive [sic] full reimbursements for [its] losses if the mortgaged property is sold through foreclosure sale or short sale * * *." (Amend. Compl., ¶ 19). According to plaintiffs, defendant's "CDS/CDO holdings create a financial offset beyond the amount that

6

could reasonably be obtained through sale in foreclosure[,] (Amend. Compl., ¶ 23), enabling it to "compare the modified [Net Present Value calculation ("NPV") required under HAMP] with an amount higher than would be realized through [foreclosure] sale alone, thereby making modification unlikely." Id.

Plaintiffs allege that defendant: (1) has "instituted companywide policies ensuring an absence of standards for determining who will be granted loan modifications by [it] * * *," (Amend. Compl., ¶ 25); (2) "drives its inventory of loans into default and eventual foreclosure, allowing it to obtain payment on the undisclosed insurance taken out against the interests of the Plaintiffs and other homeowners/mortgagors," (Amend. Compl., ¶ 26); (3) "has had, and continues to have, a fraudulent loan modification program, purporting to offer the possibility of a loan modification agreement to the Plaintiffs and other homeowners, while driving them into default to enable [it] to pursue foreclosure against those same homeowners," (Amend. Compl., ¶ 28); and (4) "falsely led Plaintiffs to believe that there was hope for loan modification and no threat of foreclosure, deterring them through misrepresentation for an extended period from seeking alternative refinancing or selling their property at the highest price," (Amend. Compl., ¶ 32).

Plaintiffs allege that they "have the capacity to make monthly payments based on their notes, if those were restructured with a principal amount in line with the present value of the properties and at a lower interest rate, in line with current market rates * * * [and] should have an option to do so * * *." (Amend. Compl., ¶ 22).

B.   Procedural History

On April 17, 2013, nine (9) named plaintiffs, and one hundred (100) "John Roe" plaintiffs, commenced this action against defendant asserting two (2) federal claims, i.e., for violations of the TILA, (Compl., ¶¶ 153-164), and the RESPA, (Compl., ¶¶ 183-190), and various state law claims. On November 7, 2013, eight (8) of the plaintiffs filed an amended complaint against defendant withdrawing, *inter alia*, their two (2) federal claims and asserting the following state law claims: (1) breach of contract (Count I), (Amend. Compl., ¶¶ 46-60); (2) breach of the implied covenant of good faith and fair dealing (Count II), (Amend. Compl., ¶¶ 61-65); (3) promissory estoppel (Count III), (Amend. Compl., ¶¶ 66-72); (4) fraudulent concealment (Count IV), (Amend. Compl., ¶¶ 73-86); (5) fraud for demanding and collecting monthly note payments under false pretenses (Count V), (Amend. Compl., ¶¶ 87-105); (6) violations of multiple state consumer protection statutes (Count VI), (Amend. Compl., ¶¶ 106-121); and (7) unjust enrichment (Count VII), (Amend. Compl., ¶¶ 122-131). Plaintiffs seek, *inter alia*: (1) specific performance of defendant's purported contractual obligations; (2) judgment declaring that defendant is required by the doctrine of promissory estoppel to honor the terms of each plaintiff's respective loan modification agreement; (3) an injunction permanently enjoining defendant from collecting on his or her respective promissory note; and (4) to recover (a) his or her actual damages "for injuries suffered by [him or her], equity removed for foreclosed properties, and payments not entitled to be received by Defendant," (Amend. Compl., at 27(E)), (b) damages "for mental anguish and emotional distress suffered by [him or her] as a result of Defendant's fraudulent modification practice * * *, (Amend. Compl., at 28(F)), (c) actual and

statutory damages "pursuant to the various state consumer protection statutes," (Amend. Compl., at 28(G)), and (d) attorney's fees, costs and pre-judgment interest.[5]

II. Discussion

  A. Diversity Jurisdiction

Both the original and amended complaints assert only this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). However, diversity jurisdiction "require[s] complete diversity between all plaintiffs and all defendants," Lincoln Property Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005); see also Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009) ("'[C]itizens of different States' means that there must be complete diversity, i.e., that each plaintiff's citizenship must be different from the citizenship of each defendant."), which is lacking in this case. Manginelli, Botsakos and Hoang are all citizens of the State of New York, (Amend. Compl., ¶¶ 35-37); Martin is a citizen of the State of Michigan, (Amend. Compl., ¶ 38); Caceres is a citizen of the State of New Jersey, (Amend. Compl., ¶ 39); Gribek is a citizen of the State of South Carolina, (Amend. Compl., ¶ 40); and the Richmonds are citizens of the State of Texas, (Amend. Compl., ¶ 41). See Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000) ("An individual's citizenship * * * is determined by his domicile. * * * Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." (quotations and citations omitted)). Like the Richmonds, defendant is also a citizen of the State of Texas, (Amend. Compl., ¶ 45).

---

[5] Although plaintiffs also seek actual damages resulting from defendant's purported violations of the TILA, the amended complaint does not assert a TILA claim.

9

See 28 U.S.C. § 1332(c)(1); In re Balfour MacLaine International Ltd., 85 F.3d 68, 76 (2d Cir. 1996) ("A corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C. § 1332; namely, it is a citizen of the state of its incorporation and of the state where it has its principal place of business.") Since the Richmonds and defendant are both citizens of the State of Texas, this Court does not have subject matter jurisdiction under the diversity statute, 28 U.S.C. § 1332(a).

B. Federal Question Jurisdiction

Nonetheless, since two (2) federal claims, i.e., the TILA and RESPA claims, were present on the face of the original complaint, this Court has independent subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See In re Egri v. Town of Haddam, 68 Fed. Appx. 249, 255 (2d Cir. July 1, 2003) (summary order). The "well-pleaded complaint" rule determines whether an action arises under the Constitution, laws, or treaties of the United States. See Vaden v. Discover Bank, 556 U.S. 49, 60, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009); Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); Romano v. Kazacos, 609 F.3d 512, 518 (2d Cir. 2010). Pursuant to the "well-pleaded complaint" rule,

> Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of

10

defenses which it is thought the defendant may interpose."

Franchise Tax Bd., 463 U.S. at 10, 103 S.Ct. 2841 (quoting Taylor v. Anderson, 234 U.S. 74, 75-76, 34 S.Ct. 724, 58 L.Ed. 1218 [1914]); see also Vaden, 556 U.S. at 60, 129 S. Ct. 1262 (holding that under the well-pleaded complaint rule, "a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is based upon federal law. * * * Federal jurisdiction cannot be predicated on an actual or anticipated defense * * * [or] counterclaim." (quotations, alterations and citations omitted)). Even in cases in which state law creates the plaintiff's causes of action, the case "might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd., 463 U.S. at 13, 103 S.Ct. 2841; see also Bracey v. Board of Education of City of Bridgeport, 368 F.3d 108, 113 (2d Cir. 2004) ("If the plaintiff's statement of his or her state-law claim in a well-pleaded complaint necessarily depends on resolution of a substantial question of federal law * * *, then the case may * * * arise under federal law within the meaning of Section 1331." (quotations and citations omitted)). In other words, federal courts have original federal question jurisdiction only where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (5-4 decision) (quoting Franchise Tax Bd., 463 U.S. at 27-28, 103 S.Ct. 2841); Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002). This Court's original federal question jurisdiction over the TILA and RESPA claims in the original complaint provides it with supplemental jurisdiction over plaintiffs' state law claims,

all of which "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

C. Supplemental Jurisdiction

The amended complaint omits both federal claims upon which this Court's original subject matter jurisdiction was conferred. Thus, all that remains is this case are plaintiffs' pendent state law claims over which this Court has only supplemental jurisdiction. See, e.g. Parker v. Della Rocco, 252 F.3d 663, 666 (2d Cir. 2001) (holding that when all of the federal claims were "dropped from the case, the district court still had the power under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the other claims." (emphasis, quotations and citation omitted)); In re Egri, 68 Fed. Appx. at 255 ("[T]he district court had authority to exercise supplemental jurisdiction over pendant [sic] state law claims, even after the [federal] claims were withdrawn from the complaint."); Goonewardena v. AMR Corp., No. 08-cv-4141, 2008 WL 5049904, at * 1, * 3 (E.D.N.Y. Nov. 25, 2008) ("When after the initial filing of his complaint a plaintiff withdraws all the claims over which the court had original jurisdiction, the court may assert supplemental jurisdiction over the remaining state claims, but it need not do so.")

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 391-92, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 388 (2d Cir. 2000), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad

Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S.Ct. 1862, 1866-1867, 173 L.Ed.2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court.") The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); see also Lundy, 711 F.3d at 117-18. Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S.Ct. 614 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine * * * will point toward declining to exercise jurisdiction."); Brzak v. United Nations, 597 F. 3d 107, 113-14 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)); Cave v. East Meadow Union Free School District, 514 F. 3d 240, 250 (2d Cir. 2008) (accord).

In light of the withdrawal of all federal claims in this action prior to any court appearance, dispositive motion or discovery, and upon consideration of all relevant factors, i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over the remaining state law claims. See, e.g. Schwartz v. Choicepoint, Inc., No. 09-cv-5154, 2011 WL 65660, at * 2 (E.D.N.Y. Jan 4. 2011) (declining to exercise supplemental jurisdiction over

remaining state law claims after the plaintiff voluntarily dismissed all claims over which the court had original subject matter jurisdiction); Johnson v. County of Nassau, No. 07-cv-79, 2009 WL 1117395, at * 1 (E.D.N.Y. Apr. 24, 2009) (accord); Goonewardena, No. 08-cv-4141, 2008 WL 5049904, at * 3 (declining to exercise supplemental jurisdiction over remaining state claims after the plaintiff withdrew his single federal claim "very early" in the litigation); Arthur Glick Truck Sales, Inc. v. H.O. Penn Machinery Co., 332 F. Supp. 2d 584, 586 (S.D.N.Y. 2004) (declining to exercise supplemental jurisdiction over remaining state law claims because the plaintiffs had "abandoned their sole federal claim before the Court decided the fully submitted motions for a preliminary injunction and to dismiss[] [and] [n]o claims remain[ed] in which th[e] court ha[d] original jurisdiction.") Accordingly, the amended complaint is *sua sponte* dismissed in its entirety without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

III. Conclusion

For the reasons stated herein, the amended complaint is *sua sponte* dismissed in its entirety without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of the Court shall close this case.

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: December 9, 2013
      Central Islip, N.Y.